**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 15-16835 MER** |
| | ) | |
| **MIDWAY GOLD US INC.** *et al.*,[1] | ) | **Chapter 11** |
| | ) | **Jointly Administered Under** |
| **Debtors.** | ) | **Case No. 15-16835 MER** |
| | ) | |

**MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER
AUTHORIZING THE IMPLEMENTATION OF A KEY EMPLOYEE RETENTION
PLAN FOR NON-INSIDER EMPLOYEES**

Midway Gold US Inc. and the affiliated debtors and debtors in possession in these cases (collectively, the "Debtors") hereby file this *Motion for an Order Authorizing the Implementation of a Key Employee Retention Plan for Non-Insider Employees* (the "Motion"). In support of the Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over these cases under 28 U.S.C. §§ 157 and 1334 and the automatic reference of all bankruptcy cases to this Court pursuant to Rule 83.3 of the Local Rules of Practice of the United States District Court for the District of Colorado – Civil.

2.     This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3.     The Debtors' corporate headquarters and their executive level and senior management are all located in Englewood, Colorado and have been for the 180 days immediately prior to the Petition Date.  Accordingly, venue of these cases and related proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors and their respective case numbers are: Midway Gold US Inc. (15-16835 MER); Midway Gold Corp. (15-16836 MER); Golden Eagle Holding Inc. (15-16837 MER); MDW-GR Holding Corp. (15-16838 MER); RR Exploration LLC (15-16839 MER); Midway Services Company (15-16840 MER); Nevada Talon LLC (15-16841 MER); MDW Pan Holding Corp. (15-16842 MER); MDW Pan LLP (15-16843 MER); MDW Gold Rock LLP (15-16844 MER); Midway Gold Realty LLC (15-16845 MER); MDW Mine ULC (15-16846 MER); GEH (B.C.) Holding Inc. (15-16847 MER) , GEH (US) Holding Inc. (15-16848 MER).

## BACKGROUND

4.　　On June 22, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are continuing in possession of their property and are operating and managing their business and affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.　　On July 1, 2015, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). No trustee or examiner has been appointed.

6.　　The Debtors hereby incorporate by reference the factual background set forth in the *Declaration of Bradley J. Blacketor in Support of Chapter 11 Petitions and Various First Day Applications and Motions* (Docket No. 22), which includes, *inter alia*, a detailed description of the Debtors' business and affairs, the Debtors' capital structure and prepetition indebtedness, and the events leading to the commencement of these cases.

7.　　The Debtors also hereby incorporate by reference the description of the Debtors' workforce as it existed on the Petition Date as set forth in the *Debtors' Expedited Motion for a Final Order Authorizing Them to Pay: (A) Prepetition Employee Wages, Salaries and Related Items; (B) Prepetition Reimbursable Expenses and Corporate Credit Card Obligations; (C) Employee Payroll Deductions and Withholdings; (D) Prepetition Contributions to, and Benefits Under, Employee Benefit Plans; and (E) All Costs and Expenses Incident to the Foregoing* (the "Employee Wage Motion") (Docket No. 13), which was granted by final order entered on June 24, 2015 (Docket No. 45).

8.　　The Debtors have determined, in the exercise of their reasonable business judgment, that it is necessary and appropriate to implement a key employee retention plan (the

- 2 -

"KERP"), as detailed below, for seven non-insider employees (the "Key Employees") who are critical to the Debtors' ability to continue operating efficiently without disruption and without the loss of valuable institutional knowledge during these cases. None of the Key Employees are part of the Debtors' executive management team. The Debtors have reviewed the KERP with their secured lenders – Commonwealth Bank of Australia and Hale Capital as agent (collectively, the "Secured Lenders") – and the Committee, each of which has indicated its consent to the approval and implementation of the KERP.[2]

### RELIEF REQUESTED

9.     By this Motion, the Debtors respectfully request that the Court enter an order, pursuant to sections 105(a), 363(b) and 503(c)(3) of the Bankruptcy Code, authorizing, but not directing, the Debtors to implement the KERP as described herein for the benefit of the Key Employees.[3]

10.     The Key Employees are individuals who have valuable and, in some instances, irreplaceable institutional knowledge of the Debtors' businesses, systems, commercial relationships, and operations and who are integral to maintaining operational stability and driving cash flow. The Key Employees would be exceptionally difficult to replace under normal circumstances, and even more difficult as a practical matter given the commencement of these cases. It is critical for the Debtors to do their utmost to ensure the continued commitment and service of the Key Employees during the pendency of these cases in order to avoid disruption to their ongoing business operations and irreparable harm to their efforts to maximize value.

---

[2] The Debtors have not included the identity of the seven employees subject to the KERP or the amount to be paid to each employee. This information is confidential and disclosure would be prejudicial and damaging to the Debtors. This information has been provided, however, to the Secured Lenders and the Committee on a confidential basis.

[3] In the event that the Debtors subsequently identify additional employees who they determine should be treated as a Key Employee, the Debtors will seek additional relief from the Court with respect to such employees and reserve all rights with respect to the same.

11.     Accordingly, with the assistance of their professional advisors and in consultation with the Secured Lenders and the Committee, the Debtors have developed the proposed KERP with the goal of providing sufficient incentive for the Key Employees to stay without paying an amount greater than is likely necessary to achieve that result.  In doing so, the Debtors considered, among other factors, who the Key Employees are, what specific services they provide, the potential for flight risk, and the incremental cost the Debtors would necessarily incur to temporarily replace certain of the Key Employees if they were to leave, recognizing that some of the Key Employees are viewed as simply being irreplaceable at this critical stage in the cases. There were multiple iterations of the proposed KERP as the terms were discussed, vetted and refined internally, including by the compensation committee of the Debtors' board of directors, and with the Debtors' professional advisors.  The Debtors believe that the following proposal strikes the appropriate balance under the facts and circumstances of these cases:

- Payment Amount.  The seven Key Employees will be eligible to receive payments totaling approximately $369,000 in the aggregate.  The specific amounts to which the individuals will be eligible to receive are, in some cases, a percentage of their respective salaries and, in other cases, a fixed amount.

- Payment Schedule.  The payments will be paid upon the completion of the earliest to occur of the following events (each a "Transaction"):

  o  The sale of substantially all of the Debtors' assets;
  o  A restructuring of the Debtors' current capital structure;
  o  The issuance of new debt or equity securities (excluding a DIP loan); or
  o  Confirmation of a Chapter 11 plan of reorganization or liquidation.

- Termination without Cause.  If a Key Employee is terminated without cause prior to the completion of a Transaction, the KERP payment for such employee will be deemed earned and payable upon the earlier of (i) thirty (30) days from the date of termination or (ii) the completion of a Transaction.

- Termination for Cause.  If a Key Employee is terminated for cause prior to the completion of a Transaction, the right of such employee to receive a KERP payment will be deemed forfeited automatically and the Debtors shall not make any KERP payment to such employee.

- 4 -

- <u>Determination of Cause</u>.   The Debtors shall have the sole and exclusive right to determine whether sufficient cause exists to terminate a Key Employee.

- <u>Priority of Payments</u>.[4]   Payments required to be made to a Key Employee under the KERP shall be senior in priority to all payment obligations currently due and owing or that may become due and owing to any of the Secured Lenders, whether on account of the Senior Secured Obligations, the Subordinate Secured Obligations, the Adequate Protection Obligations (if any), and any other obligations that may arise in connection with the use of cash collateral or the extension of postpetition financing by any of the Secured Lenders.

12.     None of the Key Employees is part of the Debtors' executive management team and none of the Debtors' executive management is included in any way in the proposed KERP.

<u>**BASIS FOR RELIEF**</u>

*A.*     *<u>The KERP is Necessary and Appropriate in the Debtors' Reasonable Business Judgment Under the Facts and Circumstances of these Cases and Meets the Requirements for Approval under Sections 363(b) and 503(c)(3) of the Bankruptcy Code.</u>*

13.     The Debtors are authorized under section 363(b) of the Bankruptcy Code to use, sell, or lease property of the estate other than in the ordinary course of business after notice and a hearing.  11 U.S.C. § 363(b)(1).  Courts in this and virtually all other districts generally apply a business judgment test in considering a request to use, sell or lease property outside of the ordinary course of business under section 363(b), and such a request should be authorized when a sound business purpose is articulated.  See, e.g., *Allen v. Cohen*, 2014 U.S. Dist. LEXIS 69674, *13 (D. Col. 2014) (applying business judgment test in the context of an asset sale); *In re Psychometric Systems, Inc.*, 367 B.R. 670, 674 (Bankr. Col. 2007) (same); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

---

[4] Capitalized terms used in this paragraph but not otherwise defined elsewhere in this Motion shall be given the meanings assigned in the *Second Interim Order (A) Authorizing Post-Petition Use of Cash Collateral, (B) Granting Adequate Protection to Secured Parties, (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) and (D) Granting Related Relief* (Doc. No. 228), as may be amended, supplemented, and/or modified from time to time.

14.     A debtor applying to use estate property under section 363(b) may do so in its reasonable discretion upon a showing "that there is a 'good business reason to grant such an application.'" *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (quoting *Lionel*, 722 F.2d at 1071). Courts have also held that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). The debtor's articulation of a valid business justification gives rise to a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

15.     However, to the extent a key employee retention plan for non-insiders is being proposed outside of the ordinary course of business, it must also be reviewed under and meet the standards of the "facts and circumstances" test under section 503(c)(3) of the Bankruptcy Code. *In re Residential Capital*, LLC, 491 B.R. 73, 84 (Bankr. S.D.N.Y. 2013); *In re Borders Group, Inc.*, 453 B.R. 459, 473-474 (Bankr. S.D.N.Y. 2011). In particular, section 503(c)(3) prohibits payments to employees outside of the ordinary course of business that are "not justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). Courts have held that this language "creates a standard no different than the business judgment standard under section 363(b)."

- 6 -

*Residential Capital*, 491 B.R. at 84; *Borders Group*, 453 B.R. at 473-474; *In re Dewey & Leboeuf LLP*, 2012 Bankr. LEXIS 3484, *10-11 (Bankr. S.D.N.Y. 2012).

16.    In determining whether a key employee retention plan for non-insiders meets the business judgment test under section 503(c)(3), courts have considered the following list of non-exclusive factors:

- Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?

- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

- Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

- Is the plan or proposal consistent with industry standards?

- What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

*In re Dana Corp.*, 358 B.R. 567, 576-577 (Bankr. S.D.N.Y. 2006); *Residential Capital*, 491 B.R. at 84; *Borders Group*, 453 B.R. at 474; *In re Dewey & Leboeuf LLP*, 2012 Bankr. LEXIS 3484, *11-12 (Bankr. S.D.N.Y. 2012).

17.    Here, the KERP is necessary and appropriate in the Debtors' business judgment and it meets each of the foregoing factors.  The KERP is a very limited retention program being offered to only seven employees who the Debtors have determined are either irreplaceable or who could be replaced but at a much greater cost to the Debtors and their bankruptcy estates and at the risk of disrupting operations and the Debtors' efforts to maximize value.  The structure is

designed to be simple and straightforward – stay through the completion of a Transaction and receive a single payment or leave and forfeit the right to receive the payment. In total, the aggregate amount of proposed payments under the KERP is approximately $369,000. As such, the KERP is narrowly tailored, is reasonable in the context of the Debtors' assets and liabilities, and does not discriminate unfairly because it is focused on those employees who, in the Debtors' judgment, are integral to maintaining operational stability and driving cash flow.

18.     Given the foregoing, there is a reasonable relationship between the plan proposed and the results to be obtained. As the court in *Residential Capital* explained:

> As set forth in the Motion and supporting evidence, the payments are awarded to certain key employees to ensure they remain with the Debtors going forward. Failure to retain these employees would cause the Debtors to incur significant costs replacing those employees and it would delay the wind-down, imposing further costs on the estate. The continuity promoted, and the institutional knowledge preserved, by the retention of such employees will increase the chances of successfully implementing the Debtors' wind-down plan.

Residential Capital, 491 B.R. at 85 (internal citation omitted).

19.     The same rationale applies here with equal force. The Debtors anticipate pursuing a sale of certain of their assets and a fulsome process to identify other potentially available restructuring alternatives that will maximize value. To date, the Debtors have already lost certain of their employees and are operating on a bare-bones basis. Just after the petition date, the Debtors' chief financial officer, Mr. Brad Blacketor, left the company and since then, his responsibilities have been performed by another employee and the Debtors' financial advisor, FTI Consulting, Inc. The Debtors have also lost their Chief Metallurgist, Safety & Health Specialist, Mine Planner, and Geographic Information System Specialist. The Debtors cannot afford to lose additional institutional knowledge at this stage. Rather, they need to be acutely

focused on their efforts to identify restructuring alternatives and to maximize value, and the proposed KERP will assist the Debtors in doing so.

20.     As described above, the KERP was developed in consultation with the Debtors' professional advisors, approved by the compensation committee of the Debtors' board of directors, and fully discussed and vetted with the Debtors' Secured Lenders and the Committee, all of whom are in agreement that the terms of the KERP are reasonable and are supportive of the relief requested in this Motion.

21.     Furthermore, section 105(a) of the Bankruptcy Code empowers a bankruptcy court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a).  The Debtors respectfully submit that an order approving the KERP is necessary and appropriate under the circumstances because it will assist the Debtors in performing their duties under the Bankruptcy Code and their duty to maximize value by incentivizing the Key Employees to remain with the Debtors and continue supporting the Debtors' restructuring efforts in these cases.

22.     Based on the foregoing, the Debtors submit that the KERP is a proper exercise of the Debtors' business judgment, is justified by the facts and circumstances of the cases and that implementing and making payments under the KERP is in the best interests of the Debtors, their estate, creditors, and all other stakeholders and should be approved.

## NOTICE

23.     Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Colorado, (ii) the Commonwealth Bank of Australia, (iii) Hale Capital Partners, L.P., (iv) counsel for the Committee, (v) the Internal Revenue Service (vi) the Securities and Exchange Commission, (vii) the Nevada Bureau of Land Management and any local, state, provincial, or federal agencies that regulate the Debtors' businesses, and (viii) all

parties requesting notices pursuant to Bankruptcy Rule 2002.  A copy of this motion is also available at the Debtors' case website at http://dm.epiq11.com/MidwayGold.

24.     The Debtors respectfully submit that, under the circumstances, no other or further notice is warranted.

## NO PRIOR REQUEST

25.     No prior request for the relief sought in this Motion has been made to this Court or any other court in connection with these cases.

***

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: August 28, 2015

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

/s/ Stephen D. Lerner
Stephen D. Lerner (Ohio #0051284)
Squire Patton Boggs (US) LLP
221 E. Fourth Street, Suite 2900
Cincinnati, OH 45202
(513) 361-1200 (phone)
(513) 361-1201 (fax)
Stephen.lerner@squirepb.com
Admitted to District Court for District of Colorado

Nava Hazan (NY # 3064409)
Squire Patton Boggs (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
(212) 872-9800
(212) 872-9815
Nava.hazan@squirepb.com
Admitted to District Court for District of Colorado

SENDER WASSERMAN WADSWORTH, P.C.

/s/ Harvey Sender
Harvey Sender, #7546
1660 Lincoln Street, Suite 2200
Denver, Colorado 80264
(303) 296-1999; (303) 296-7600 (fax)
dvw@sendwass.com

**Proposed Attorneys for the Debtors and Debtors in Possession**