UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Case No. 15-16835 MER |
| | ) | |
| **MIDWAY GOLD US INC.** *et al.*,[1] | ) | Chapter 11 |
| | ) | Jointly Administered Under |
| Debtors. | ) | Case No. 15-16835 MER |
| | ) | |

### MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER EXTENDING EXCLUSIVE PERIODS TO FILE A PLAN AND SOLICIT ACCEPTANCES UNDER SECTION 1121(d) OF THE BANKRUPTCY CODE

Midway Gold US Inc. and the affiliated debtors and debtors in possession in these cases (collectively, the "Debtors") hereby file this *Motion for an Order Extending Exclusive Periods to File a Plan and Solicit Acceptances Under Section 1121(d) of the Bankruptcy Code* (the "Motion"). The Debtors have discussed this Motion with their prepetition secured lenders and the Committee (as defined below) and they have no objection to the relief requested herein. In support of the Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over these cases under 28 U.S.C. §§ 157 and 1334 and the automatic reference of all bankruptcy cases to this Court pursuant to Rule 83.3 of the Local Rules of Practice of the United States District Court for the District of Colorado – Civil.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3. The Debtors' corporate headquarters and their executive level and senior management are all located in Englewood, Colorado and have been for the 180 days immediately

---

[1] The Debtors and their respective case numbers are: Midway Gold US Inc. (15-16835 MER); Midway Gold Corp. (15-16836 MER); Golden Eagle Holding Inc. (15-16837 MER); MDW-GR Holding Corp. (15-16838 MER); RR Exploration LLC (15-16839 MER); Midway Services Company (15-16840 MER); Nevada Talon LLC (15-16841 MER); MDW Pan Holding Corp. (15-16842 MER); MDW Pan LLP (15-16843 MER); MDW Gold Rock LLP (15-16844 MER); Midway Gold Realty LLC (15-16845 MER); MDW Mine ULC (15-16846 MER); GEH (B.C.) Holding Inc. (15-16847 MER) , GEH (US) Holding Inc. (15-16848 MER).

prior to the Petition Date. Accordingly, venue of these cases and related proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. On June 22, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are continuing in possession of their property and are operating and managing their business and affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On July 1, 2015, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). No trustee or examiner has been appointed.

6. The Debtors' exclusive right to file a plan of reorganization in these cases currently expires on October 20, 2015 (i.e., 120 days after the Petition Date) (the "Current Plan Exclusivity Period") and the Debtors' exclusive right to seek acceptance for such a plan currently expires on December 21, 2015 (i.e., 180 days after the Petition Date) (the "Current Acceptance Exclusivity Period").[2]

## RELIEF REQUESTED

7. The Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, extending the Current Plan Exclusivity Period by 90 days through and

---

[2] The date that is 180 days after the Petition Date is Saturday, December 19, 2015. Pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedure, the date is therefore automatically extended to Monday, December 21, 2015.

including January 18, 2016 and the Current Acceptance Exclusivity Period by 91 days through and including March 21, 2016.[3]

## BASIS FOR RELIEF

**A.** **Applicable Law**

8. The Debtors have the exclusive right to file a plan of reorganization during the first 120 days of these cases (the "Plan Exclusivity Period"). 11 U.S.C. § 1121(b). This exclusive right terminates, however, if (i) a trustee is appointed, (ii) the Debtors do not file a plan within the Plan Exclusivity Period, or (iii) a plan is filed within the Plan Exclusivity Period but is not accepted by each class of claims or interests impaired under the plan during the first 180 days of these cases (the "Acceptance Exclusivity Period" and together with the Plan Exclusivity Period, the "Exclusivity Periods"). 11 U.S.C. § 1121(c). If the Debtors' exclusive rights terminate, any party in interest may file a plan. *Id*.

9. These Exclusivity Periods are an essential feature of the powers and advantages given to a debtor to facilitate its reorganization efforts. "Underlying the Bankruptcy Code is the general principle that an honest and diligent debtor should be given a first opportunity to get a plan confirmed and do so in the most cost-effective manner possible." *In re Aspen Limousine Service, Inc.*, 187 B.R. 989, 993 (Bankr. Col. 1995).

10. On request of a party in interest made within the respective Exclusivity Periods and after notice and a hearing, a court may reduce or increase either of the Exclusivity Periods for cause. 11 U.S.C. § 1121(d)(1). However, the Plan Exclusivity Period may not be extended to a date that is more than 18 months after the Petition Date, and the Acceptance Exclusivity

---

[3] A 90-day extension of the Current Acceptance Exclusivity Period falls on Sunday, March 20, 2016, and would be automatically extended to Monday, March 21, 2016 under Bankruptcy Rule 9006.

Period may not be extended to a date that is more than 20 months after the Petition Date. 11 U.S.C. § (d)(2).

11. The Bankruptcy Code does not define the circumstances that would constitute sufficient cause for an extension, although some courts have found the legislative history instructive:

> Subsection (d) [of section 1121] permits the court, for cause, to increase or reduce the 120-day…period…specified. Since the debtor has an exclusive privilege for [4] months during which others may not file a plan, the granted extension should be based on a showing of some promise of probable success. An extension should not be employed as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory.

S. Rep. No. 95-989, at 118 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5904, as quoted in *In re Elder-Beerman Stores Corp.*, 1997 U.S. Dist. LEXIS 23785, *10-11 (S.D. Ohio 1997).

> Proposed Chapter 11 recognizes the need for the debtor to remain in control to some degree, or else debtors will avoid the reorganization provisions in the bill until it would be too late for them to be an effective remedy. At the same time, the bill recognizes the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company. The bill gives the debtor an exclusive right to propose a plan for 120 days. In most cases, 120 days will give the debtor adequate time to negotiate a settlement, without unduly delaying creditors. The court is given the power, though, to increase or reduce the 120-day period depending on the circumstances of the case. For example, if an unusually large company were [sic] to seek reorganization under Chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement … Again, the bill allows the flexibility for individual cases that is unavailable today.

H.R. Rep. No. 95-595, at 232 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6191, as quoted in *Elder-Beerman*, *supra*, 1991 U.S. Dist. LEXIS 23785 at *10-11.

12. Courts have considered numerous factors in determining whether cause exists to extend the Exclusivity Periods in a given case depending on the facts and circumstances of each case. *Elder-Beerman*, *supra*, 1991 U.S. Dist. LEXIS 23785 at *12-13. "Thus, a bankruptcy

court faced with the issue of whether the necessary "cause" exists to extend the exclusivity period has a high degree of flexibility in fashioning the appropriate test to be applied, and is not required to apply any particular set of factors, or number of factors, in every case." *Id*.

13. Among other examples, courts have considered: (i) the legislative history behind section 1121(d); (ii) the size and complexity of the bankruptcy case; (iii) the debtor's progress in the bankruptcy proceedings, (iv) the debtor's motivation in seeking an extension of exclusivity and promise of probable success in presenting a plan within the time frame requested; (v) the possibility of harm to the creditors; and (vi) whether the parties have reached a stalemate or impasse in plan negotiations. *Id*. at *14.

14. In addition, courts have exercised their equitable powers under section 105 of the Bankruptcy Code in extending or otherwise adjusting plan and confirmation time lines, including exclusivity periods under section 1121. See, e.g., *Aspen Limousine*, *supra*, 187 B.R. at 995. In doing so, the Court in *Aspen Limousine* explained:

> Section 105(d)(2) provides, generally, rather substantial flexibility and latitude for the Court to designate, or adjust, the Chapter 11 plan, disclosure statement, and confirmation time lines and procedure. Section 105, coupled with the terms of Sections 1121 and 1125, suggests that this Court can look to equitable factors to fix a time schedule as may be necessary to keep the process fair, fast, effective, and efficient.
>
> Section 105(d)(2) lets this Court "mix and match" the opportunities and timing for a debtor, creditors, and parties-in-interest, to file plans and disclosure statements, and solicit acceptances of such plans. It is an omnibus provision with which the Court can customize Chapter 11 preconfirmation procedures, as long as those procedures are not inconsistent with other provisions of the Code. Thus, the Court is authorized to use Section 105(d)(2) options as long as they don't conflict with Sections 1121 and 1125.

*Id*.

B.     **Sufficient Cause Exists to Extend the Exclusivity Periods.**

15.    Sufficient cause exists in these cases to grant the requested extension of the Exclusivity Periods. Since the Petition Date, the Debtors have worked diligently and made significant progress with their restructuring efforts. They have successfully transitioned into chapter 11, continued to preserve and maximize value by maintaining gold production at their Pan gold mine, and worked cooperatively and communicated extensively with the Secured Parties, the Committee, and key suppliers and service providers. Since the Petition Date, the Debtors have complied with their cash collateral budget and have exceeded the projections for cash on hand. The Debtors have achieved a number of significant milestones to date, among other things, including: (i) obtaining critical first day interim relief and, in most instances, subsequent final relief that allowed the Debtors to operate their business and maximize value including with respect to, among other things, access to cash collateral to operate their business, employee wage matters, and other forms of relief typical in large chapter 11 cases; (ii) filing their schedules and statements; (iii) establishing a deadline for filing proofs of claim; (iv) attending the section 341 meetings of creditors; (v) working cooperatively with the Debtors' secured lenders to obtain continued use of cash collateral on a consensual basis; (vi) retaining a replacement investment banker and working diligently to bring them up to speed on the restructuring efforts following the resignation of the Debtors' original investment banker; (vii) filing monthly operating reports; (viii) obtaining Court approval of a key employee retention program that should enable the Debtors to retain key employees necessary for the Debtors' reorganization; (ix) engaging with Barrick Gold with respect to a possible sale of the Spring Valley project; (x) extensively communicating with the Debtors' secured lenders and the

Committee with respect to restructuring alternatives and all significant matters in these cases; and (xi) engaging and communicating with vendors and contract and lease counterparties.

16. These cases are large and complex and the mining industry as a whole remains troubled and in flux. Much has been achieved already, but much remains to be done and the Debtors require additional time to further investigate and develop all available restructuring alternatives and to use their best efforts to attempt to reach a consensus with the key creditors and stakeholders with respect to an appropriate exit strategy and path forward.

17. An extension of the Exclusivity Periods will not prejudice any creditor and is not being sought to for purposes of delay or for any other improper purpose. To the contrary, an extension will facilitate continued discussions and negotiations on a consensual basis with all key parties and stakeholders while providing the Debtors with continued control over the plan confirmation process and related matters.

18. Although the Debtors believe that they will be able to make additional progress with their restructuring efforts if the extension is granted, it is possible that further extensions may be necessary or appropriate. Accordingly, the Debtors respectfully reserve the right to seek additional extensions of the Exclusivity Periods in their discretion.

19. For the foregoing reasons, sufficient cause exists to extend the Exclusivity Periods as requested in this Motion.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, extending the Exclusivity Periods as requested, subject to the Debtors' rights to seek further extensions if they deem necessary or appropriate, and granting such other and further relief as the Court deems just and proper.

Dated: September 17, 2015

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

/s/ *Stephen D. Lerner*
Stephen D. Lerner (Ohio #0051284)
Squire Patton Boggs (US) LLP
221 E. Fourth Street, Suite 2900
Cincinnati, OH 45202
(513) 361-1200 (phone)
(513) 361-1201 (fax)
Stephen.lerner@squirepb.com
Admitted to District Court for District of Colorado

Nava Hazan (NY # 3064409)
Squire Patton Boggs (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
(212) 872-9800
(212) 872-9815
Nava.hazan@squirepb.com
Admitted to District Court for District of Colorado

SENDER WASSERMAN WADSWORTH, P.C.

*/s/ Aaron J. Conrardy*
Harvey Sender, #7546
Aaron J. Conrardy, #40030
1660 Lincoln Street, Suite 2200
Denver, Colorado 80264
(303) 296-1999; (303) 296-7600 (fax)
hsender@sww-legal.com
aconrardy@sww-legal.com

**Attorneys for the Debtors and Debtors in Possession**