### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | Case No. 15-16835 (MER) |
| MIDWAY GOLD US INC., et al.,[1] | Chapter 11 |
| Debtors. | Jointly Administered Under Case No. 15-16835 (MER) |
| | **Re: Docket No. 507** |

### ORDER (A) APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

Upon the motion, dated December 1, 2015 [Docket No. 507] (the "***Motion***")[2], of Midway Gold US Inc. and its affiliated debtors and debtors in possession (collectively, the "***Debtors***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***"), for entry of an order, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rules 2002-1 and 6004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Colorado (the "***Local Rules***"), seeking, among other things, approval of the sale (the "***Sale***") to Solidus Resources, LLC (the "***Purchaser***")[3] of

---

[1] The Debtors and their respective case numbers subject to this order are: Midway Gold US Inc. (15-16835 MER); Midway Gold Corp.(15-16836 MER); Golden Eagle Holding, Inc. (15-16837); MDW-GR Holding Corp. (15-16838 MER); RR Exploration, LLC (15-16839 MER); Midway Services Company (15-16840); Nevada Talon, LLC (15-16841 MER); MDW Pan Holding Corp. (15-16842 MER); MDW Pan LLP (15-16843 MER); MDW Gold Rock LLP (15-16844 MER); Midway Gold Realty LLC (15-16845 MER); MDW Mine ULC (15-16846 MER); GEH (B.C.) Holding Inc. (15-16847 MER); GEH (US) Holding Inc. (15-16848 MER).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, or, if not defined in the Motion, shall have the meanings ascribed to them in the Asset Purchase Agreement (as defined herein).

[3] Purchaser is an indirect, wholly-owned subsidiary of Waterton Precious Metals Fund II Cayman, LP ("***Waterton***").

all of the right, title and interest in the Selling Debtors'[4] Purchased Assets (as defined in the Motion), free and clear of all liens, claims (including, without limitation, as defined in section 101(5) of the Bankruptcy Code), rights or claims based on any successor or transferee liability, interests, encumbrances, rights, remedies, restrictions, liabilities and contractual commitments of any kind or nature whatsoever, whenever arising, whether at law or in equity, and granting certain related relief; and the Selling Debtors having agreed to enter into and consummate the Asset Purchase Agreement attached hereto as <u>Exhibit A</u> with the Purchaser (such Asset Purchase Agreement, as amended, the "***Asset Purchase Agreement***"); and the Sale Hearing having been held on December 14, 2015; and upon the record of the Sale Hearing, and all of the proceedings before this Court; and this Court having reviewed the Motion and any objections thereto and having found and determined that the relief sought in the Motion, and entry of this Order, is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest; and after due deliberation thereon and sufficient cause appearing therefore:

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**[5]

A.    **Jurisdiction, Venue and Core Proceeding:**  This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  The matters are core proceedings under 28 U.S.C. § 157(b)(2).  Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Venue in this district and before this Court was proper as of the Petition Date and continues to be proper.

---

[4] The Selling Debtors are Midway Gold US Inc. ("***Midway Gold***") and Nevada Talon, LLC.

[5] Findings of fact shall be construed as conclusions of law and conclusions of law shall be constructed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are 105, 363 and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9008 and 9014 of the Bankruptcy Rules and Rules 2002-1 and 6004-1 of the Local Rules.  The consummation of the transactions contemplated by the Motion, the Asset Purchase Agreement and this Order is legal, valid and properly authorized under all such provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and all of the applicable requirements of such sections and rules have been complied with in respect of such transactions.

C.    **Notice.**  As evidenced by the affidavits of service and publication filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the procedures for assumption and assignment of Assigned Contracts (as defined in paragraph U below), the proposed Cure Amounts, the Sale and all transactions contemplated therein or in connection therewith, and all deadlines related thereto, was given and no further notice need be provided.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

D.    Actual written notice of the Motion, the Sale Hearing, the procedures for assumption and assignment of contracts and leases, the proposed Cure Amounts, the Sale and all transactions contemplated therein or in connection therewith, and all deadlines related thereto has been given to all interested persons and entities, including, without limitation: (i) all entities that assert any Lien, Claim or Interest (each as defined below) in the Purchased Assets; (ii) all parties to the Executory Contracts and Unexpired Leases; (iii) all parties to the Assigned Contracts assumed and sold and assigned pursuant to this Order; (iv) all governmental taxing authorities that have or as a result of the Sale may have Claims, contingent or otherwise, against

3

the Debtors; (v) all state and local taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (vi) all state and local governmental agencies and environmental agencies in any jurisdiction where the Debtors own or have owned or used real property; (vii) the Nevada Division of Environmental Protection; (viii) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; (ix) all known creditors (whether liquidated, contingent or unmatured) of the Selling Debtors; (x) all interested governmental, pension, environmental and other regulatory entities; (xi) the Office of the Attorney General of the State of Nevada; (xii) the Nevada Department of Taxation; (xiii) any other applicable state attorneys general; (xiv) the Office of the United States Trustee for the District of Colorado; (xv) the United States Department of Justice; (xvi) counsel to Barrick Gold Exploration Inc., (xvi) counsel to the Purchaser and all other notice parties reasonably requested by Purchaser in accordance with the Asset Purchase Agreement; and (xvii) the United States Department of the Interior, Bureau of Land Management.  The foregoing constitutes proper, timely, adequate, and sufficient notice under the particular circumstances of these Chapter 11 Cases, and no further notice need be provided.

E.    The Publication Notice was published in *The Mining Journal* and *The Reno Gazette-Journal* on December 4, 2015.  See Docket No. 543.  Such publication notice was sufficient and proper notice to any other interested parties, including those whose identities are unknown to the Debtors.

F.    **Extensive Efforts by Debtors.**  The Sale is the product of extensive efforts by the Debtors to identify all available alternatives to maximize the value of their interest in the Purchased Assets, including the Spring Valley Project, including, among other things, (i) a prepetition six-week transaction process to identify possible equity and/or asset transactions

4

which yielded no offers for Midway Gold's 30% interest in the Spring Valley Project; (ii) two postpetition efforts to engage with Barrick with respect to a process to conduct a consensual sale of 100% of the Spring Valley Project, which efforts were ultimately unsuccessful; (iii) the commencement of the Barrick Litigation to exercise their statutory rights under section 363(h) of the Bankruptcy Code to sell 100% of the Spring Valley Project over Barrick's objections; and (iv) extensive negotiations with Waterton over the terms of the Sale and the necessary documentation, which were conducted in good faith and at arm's length.  In effect, the Sale will result in a consensual sale of 100% of the Spring Valley Project, resolve pending and future disputes with Barrick, maximize value by generating not less than $25 million in cash proceeds, and otherwise benefit the Debtors' estates and creditors and other stakeholders.

G. **Business Justification.**    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale. In light of the circumstances of these Chapter 11 Cases, time is of the essence in (i) consummating the Sale and all related transactions, (ii) preserving the value of the Debtors' assets, and (iii) minimizing the widespread and adverse economic consequences to the Debtors, their estates, and their creditors.

H. **Adequate Marketing; Highest or Best Offer.**  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, (a) the Debtors' prepetition efforts to sell Midway Gold's 30% interest in the Purchased Assets, including the Spring Valley Project, yielded no offers; (b) Barrick executed the Barrick APA with respect to, among other things, its 70% interest in the Spring Valley Project, after an extensive marketing process conducted by Barrick and its investment banker CIBC, which provides for the same pro rata

5

purchase price as provided in the Asset Purchase Agreement for Midway Gold's 30% interest, thus indicating fair market value for Midway Gold's interest; (c) in the opinion of the Debtors' senior management and their investment banker, the consideration provided by the Purchaser in the Asset Purchase Agreement is toward the high range of the value of Midway Gold's 30% interest in the Spring Valley Project that they would have reasonably expected to realize through any further marketing of the Purchased Assets and exceeds the values set forth in prior oral and written expressions of interest received by the Debtors and their investment banker; (d) the consideration provided by the Purchaser in the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets; (e) the consideration provides fair and reasonable consideration for the Purchased Assets and constitutes reasonably equivalent value under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia; (f) the Sale will provide a greater recovery for the Debtors' creditors with respect to the Purchased Assets than would be provided by any other practically available alternative, including an auction or other sale process; (g) taking into consideration all relevant factors and circumstances, no other entity has offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates; (h) the Debtors' determination that the Asset Purchase Agreement constitutes the highest or best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment; and (i) the sale of the Purchased Assets on the terms set forth in the Asset Purchase Agreement and this order will resolve significant pending and future disputes between the Debtors and Barrick.

I.    **Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Motion, and all relief requested therein has been afforded to all interested parties.

6

J.  **Assets Property of the Estate.**  The Purchased Assets are property of the Selling Debtors' estates and title thereto is vested in the Selling Debtors' estates.

K.  **Sale in Best Interests.**  The actions represented to be taken by the Selling Debtors and the Purchaser are appropriate under the circumstances of these Chapter 11 Cases and are in the best interests of the Debtors, their estates and creditors, and other parties in interest.  Approval of the Asset Purchase Agreement and of the Sale and all related transactions at this time is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest.

L.  **No *Sub Rosa* Plan.**  The consummation of the Sale outside of a chapter 11 plan pursuant to the Asset Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors.  The Sale and the transactions contemplated therein do not constitute a *sub rosa* plan.

M.  **Arm's-Length Sale.**  The Asset Purchase Agreement, the Sale and the transactions contemplated therein and associated therewith were negotiated, proposed, and entered into by the Selling Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors, their insiders and affiliates, nor the Purchaser have engaged in any conduct that would cause or permit the Asset Purchase Agreement, the Sale, or any part of the transactions thereby to be avoided under section 363(n) of the Bankruptcy Code.

N.  **Good Faith Purchaser.**  The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.

O.  **Prompt Consummation.**  The Sale and the transactions related thereto must be approved and consummated as promptly as practicable in order to preserve the value of the Purchased Assets.

P.  **Corporate Authority.**  Each Selling Debtor (i) has full corporate power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate action of each of the Selling Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement, (iii) has taken all corporate action necessary to authorize and approve the Asset Purchase Agreement and the consummation by the Selling Debtors of the transactions contemplated thereby, and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, which may be waived in accordance with the terms therewith.

Q.  **Free and Clear Findings Required by the Purchaser.**  The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale if the Assets were not being sold to the Purchaser pursuant to section 363(f) of the Bankruptcy Code, free and clear, except for Permitted Encumbrances and Assumed Liabilities, of (i) all liens (statutory or otherwise), claims, mortgages, deeds of trust, pledges, charges, security interests, charges, rights of first refusal, hypothecations, encumbrances, royalties, easements, leases or subleases, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of offset or recoupment, subleases, leases or conditional sale arrangements (collectively, the "*Liens*"), (ii) all claims as defined in section 101(5) of the Bankruptcy Code, including all rights or causes of action (whether in law or in equity), Proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment,

8

indemnity or contribution, obligations, demands, restrictions, indemnification claims or liabilities relating to any act or omission of the Selling Debtors or any other person prior to the Closing, consent rights, options, contract rights, covenants and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "*Claims*"), and (iii) all debts, liabilities, obligations, contractual rights and claims and labor, employment and pension claims, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively the "*Interests*").  Except for Permitted Encumbrances and Assumed Liabilities, the Sale shall be free and clear of, and the Purchaser shall not be responsible for, any Liens, Claims or Interests, including, without limitation, in respect of the following: (i) any rights or Claims based on any successor or transferee liability, (ii) any Liens, Claims or Interests that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtors' or the Purchaser's interest in the Purchased Assets, or any similar rights; (iii) any labor or employment agreements; (iv) mortgages, deeds of trust and security interests; (v) intercompany loans and receivables between the Selling Debtors and any Debtors or non-Debtor affiliates; (vi) any pension, multiemployer plan (as such term is defined in Section 3(37) or Section 4001(a)(3) of ERISA), health or welfare, compensation or other employee benefit

9

plans, agreements, practices and programs, including, without limitation, any pension plans of the Selling Debtors or any multiemployer plan to which the Selling Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Code and of any similar state law (collectively, "***COBRA***"), (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, or (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors; (viii) the Federal Mine Safety and Health Act of 1977 or its associated regulations; (ix) penalties of any kind whatsoever assessed against the Debtors by the United States Department of Labor's Mine Safety and Health Administration; (x) any bulk sales or similar law; (xi) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing; (xii) any Executory Contract or Unexpired Lease that is not an Assigned Contract that will be assumed and assigned pursuant to this Order and the Asset Purchase Agreement; (xiii) any other Excluded Liabilities as provided in the Asset Purchase Agreement.  A sale of the Purchased Assets other than one free

10

and clear of all Liens, Claims, and Interests would yield substantially less value for the Debtors' estates, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by the Asset Purchase Agreement free and clear of all Liens, Claims and Interests, except for Permitted Encumbrances and Assumed Liabilities, is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

R. **Binding and Valid Transfer.** The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and, except for the Permitted Encumbrances and Assumed Liabilities, will vest the Purchaser with all right, title, and interest of the Selling Debtors to the Purchased Assets free and clear of all Liens, Claims, and Interests and any liabilities of the Selling Debtors.

S. **Satisfaction of 363(f) Standards.** The Selling Debtors may sell the Purchased Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Liens, Claims and Interests, and non-Debtor parties to the Assigned Contracts who did not object, or who withdrew their objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. In all cases, each such person with Liens, Claims or Interests in the Purchased Assets is enjoined from taking any action against the Purchaser, the Purchaser's affiliates or any agent of the foregoing to recover any such Lien, Claim or Interest.

T. **Necessity of Order.** The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the transactions without all of the relief provided for in this Order (including, but not limited to, that the transfer of the Purchased Assets to the Purchaser be free and clear of all Liens, Claims and Interests). The consummation of the

11

transactions pursuant to this Order and the Asset Purchase Agreement is necessary for the Debtors to maximize the value of their estates for the benefit of all creditors and other parties in interest.

U. **Assigned Contracts.** The Selling Debtors have demonstrated that it is an exercise of their sound business judgment to sell, assume and assign the Executory Contracts and Unexpired Leases listed on Schedule 2.1(h) of the Asset Purchase Agreement (collectively, the "*Assigned Contracts*", and individually, an "*Assigned Contract*") to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their estates and creditors, and other parties in interest. The Assigned Contracts being assigned to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser, and, accordingly, such assumption and assignment of the Assigned Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtors' bankruptcy estates.

V. **Cure and Adequate Assurance.** The Selling Debtors have cured or the Selling Debtors have demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Closing under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code. The proposed Cure Amounts or any other cure amount reached by agreement after a Cure Payment Objection are deemed the amounts necessary to "cure" within the meaning of section 365(b)(1) of the Bankruptcy Code all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under such Assigned Contracts. Pursuant to the terms of Asset Purchase Agreement, Purchaser shall pay all such cure amounts directly to the counterparties to the Assigned Contracts. The Purchaser's promise to perform the obligations under the Assigned Contracts arising after the Closing shall constitute

12

adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.  All counterparties to the Assigned Contracts who did not file a Cure Payment Objection or an objection to the assumption and assignment of the Assigned Contracts prior to the Sale Hearing, are deemed to consent to the assumption by the Debtors of their respective Assigned Contract and the assignment thereof to the Purchaser.  The objections of all counterparties to the Assigned Contracts that did file an objection to the assumption and assignment of such parties' respective Assigned Contract or proposed Cure Amount relating thereto were heard at the Sale Hearing (to the extent not withdrawn), were considered by this Court, and are overruled on the merits with prejudice.  This Court finds that with respect to all such Assigned Contracts the payment of the proposed Cure Amounts in accordance with the terms of the Asset Purchase Agreement is appropriate and is deemed to fully satisfy the Debtors' obligations under section 365(b) of the Bankruptcy Code.  This Court further finds that the Assumption and Assignment Procedures were reasonable and gave contract counterparties adequate notice of and opportunity to respond to the proposed assumption and assignment of the Assigned Contracts.  Accordingly, all of the requirements of section 365(b) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the Debtors to the Purchaser of each of the Assigned Contracts.  To the extent any Assigned Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of this Order that are applicable to the Purchased Assets.

     W.   **Unenforceability of Anti-Assignment Provisions.**  Anti-assignment provisions in any Assigned Contract shall not restrict, limit, or prohibit the assumption, assignment, and sale

13

of the Assigned Contracts and should be deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

      X.    **Final Order.**  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

      Y.    Entry of this Order is in the best interests of the Debtors, the Debtors' estates, their creditors, and other parties in interest.

**<u>ORDER</u>**

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

      1.    **Motion is Granted.**  The Motion is granted and the relief requested therein with respect to the Sale is granted and approved in its entirety, as set forth herein.

      2.    **Objections are Overruled.**  Any objections to the entry of this Order or to the relief granted herein or the relief requested in the Motion, including any objections to the proposed Cure Amounts or the assumption and assignment of any Assigned Contracts, that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, are hereby denied and overruled on the merits with prejudice.

      3.    **Approval.**  The Asset Purchase Agreement, and all the terms and conditions thereof, is approved.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Selling Debtors are authorized to perform their obligations under, and comply with the terms of, the Asset Purchase Agreement and consummate the Sale and the related transactions pursuant to, and in accordance with, the terms and conditions of the Asset Purchase Agreement and this

14

Order.  The Selling Debtors are authorized to execute and deliver, and empowered to perform under, consummate, and implement, the Asset Purchase Agreement, together with all additional instruments and documents that the Selling Debtors or the Purchaser deem necessary or appropriate to implement the Asset Purchase Agreement and effectuate the transactions contemplated therein, and to take all further actions as may reasonably be required by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to Purchaser's possession the Purchased Assets or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement.

4. **Binding Effect of Order.**  This Order and the Asset Purchase Agreement shall be binding in all respects upon all known and unknown creditors of, and holders of equity security interests in, any Debtor, including any holders of Liens, Claims and Interests, all counterparties to the Assigned Contracts, all successors and assigns of the Purchaser, each of the Debtors and their Affiliates and subsidiaries, the Purchased Assets, and any trustees appointed in the Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code and this Order shall not be subject to amendment or modification and the Asset Purchase Agreement shall not be subject to rejection.  Subject to the terms and conditions of the Asset Purchase Agreement, the terms of this Order shall apply in the event the Sale under the Asset Purchase Agreement is consummated by and under any chapter 11 plan, and may be incorporated into any confirmation order.  Nothing contained in any chapter 11 plan confirmed in the Chapter 11 Cases or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Asset Purchase Agreement or this Order.

15

     5.    **Injunction.**  All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Selling Debtors to transfer the Purchased Assets to the Purchaser in accordance with the Asset Purchase Agreement and this Order.  Following the Closing, except for persons entitled to enforce Assumed Liabilities and Permitted Encumbrances, all Persons (including, but not limited to, (i) the Debtors and/or their respective successors (including any trustee), (ii) creditors, (iii) investors, (iv) current and former employees and shareholders, (v) administrative agencies, (vi) governmental units, (vii) secretaries of state, (viii) federal, state, and local officials, including those maintaining any authority relating to any environmental, health and safety laws, and (ix) the successors and assigns of each of the foregoing) holding Liens, Claims or Interests in the Purchased Assets or against the Selling Debtors in respect of the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Liens, Claims or Interests of any kind or nature whatsoever against the Purchaser or any Affiliate of the Purchaser or any of their respective property, successors and assigns, or the Purchased Assets, as an alleged successor or on any other grounds.  No Person shall assert, and the Purchaser and the Purchased Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), liabilities, claims and interests, or basis of any kind or nature whatsoever to delay, defer, or impair any right of the Purchaser or the Selling Debtors, or any obligation of any other party, under or with respect to, any Purchased Assets, with respect to any act or omission that occurred prior to the Closing or with respect to any other agreement or any obligation of the Debtors that is not an Assumed Liability.

6.      **General Assignment.**  Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Selling Debtors' interests in the Purchased Assets and a bill of sale transferring good and marketable title in the Purchased Assets to the Purchaser free and clear of all Liens, Claims and Interests, except for the Permitted Encumbrances and Assumed Liabilities.  Each and every federal, state, and local governmental agency, quasi-agency, or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions.

7.      **Transfer Free and Clear.**  Except for the Permitted Encumbrances and Assumed Liabilities, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser as required under the Asset Purchase Agreement, and such transfer shall be free and clear of all Liens, Claims, and Interests of any Person, including, without limitation, all such Liens, Claims, and Interests specifically enumerated in paragraph Q of this Order, whether arising by agreement, by statute or otherwise and whether occurring or arising before, on or after the Petition Date, whether known or unknown, occurring or arising prior to such transfer, with all such Liens, Claims and Interests to attach to the proceeds of the Sale ultimately attributable to the property against or in which the holder of a Lien, Claim or Interest claims or may claim a Lien, Claim or Interest, in the order of their priority, with the same validity, force, and effect which they now have, subject to any claims and defenses the Selling Debtors may possess with respect thereto.  No proceeds of the Sale shall be paid to any party or otherwise used by the Debtors except in accordance with the *Final Order (A) Authorizing Post-Petition Use of Cash Collateral, (B) Granting Adequate Protection to Secured*

17

*Parties, and (C) Granting Related Relief [Docket No. 452]* or pursuant to a further order of the Court after written notice and an opportunity to object and be heard is given to parties in interest.

8.    **Valid Transfer.**  The transfer of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title, and interest of the Selling Debtors in and to the Purchased Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever, except for the Permitted Encumbrances and Assumed Liabilities.

9.    **Exculpation and Release.**   Neither the Purchaser nor any of its affiliates, successors, and assigns, shall have, or incur any liability to, or be subject to any action by, the Debtors or any of their predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, or delivery of the Asset Purchase Agreement and the entry into and consummation of the Sale, except as expressly provided in the Asset Purchase Agreement and this Order.

10.    **Direction to Release Interests.**   Upon the Closing, each of the Selling Debtors' creditors and any other holder of a Lien, Claim or Interest is authorized and directed to execute such documents and take all other actions as may be necessary to release its Lien, Claim or Interest in the Purchased Assets, if any, as such Lien, Claim or Interest may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing a Lien, Claim or Interest in the Selling Debtors or the Purchased Assets shall not have delivered to the Selling Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens, Claims and Interests, which the person or entity has with respect to the Debtors or the Purchased Assets or otherwise,

18

then (i) the Selling Debtors are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Debtors or the Purchased Assets, and (ii) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the release of all Liens, Claims and Interests of any kind or nature whatsoever in the Selling Debtors or the Purchased Assets.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement, including, without limitation, recordation of this Order.  This Order shall be binding upon and shall govern the acts of all Persons including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments (including, without limitation, the Nevada Department of Taxation), secretaries of state, federal, state, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.

11.     **No Interference.**  Following the Closing, no holder of any Lien, Claim or Interest in the Purchased Assets (except holder of Permitted Encumbrances and Assumed Liabilities solely in accordance with applicable law) shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets based on, or related to, any such Lien, Claim or Interest, or based on any actions the Selling Debtors may take in the Chapter 11 Cases.

12.     **Surrender of Possession.**  All entities that are currently, or on the Closing may be, in possession of some or all of the Purchased Assets are hereby directed to surrender

19

possession of the Purchased Assets to the Purchaser on the Closing, unless the Purchaser otherwise agrees.

13. **Post-Closing Actions and Transactions.**    The Selling Debtors and the Purchaser, and each of their respective officers, employees, and agents, will be authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Selling Debtors or the Purchaser deem necessary or appropriate to implement and effectuate the terms of the Asset Purchase Agreement and this Order.  Further, effective as of the Closing, the Purchaser, its successors and assigns, shall be designated and appointed the Selling Debtors' true and lawful attorney and attorneys, with full power of substitution, in the Selling Debtors' name and stead, its successors and assigns, to demand and receive any and all of the Purchased Assets, and from time to time institute and prosecute in the name of the Purchaser, for the benefit of the Purchaser, its successors and assigns, any and all proceedings at law, in equity, or otherwise, that the Purchaser, its successors or assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets that the Purchaser, its successors and assigns, shall deem desirable.  All of the foregoing powers granted to the Purchaser are coupled with an interest and are irrevocable by the Selling Debtors.

14. **Sale is Self-Executing**.  The Sale is self-executing, and neither the Selling Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

15. **No Discriminatory Treatment.**  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any

20

permit, license, or similar grant relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement.

16.     **Assumption and Assignment of Contracts.**  Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code and subject to and conditioned upon the Closing, the Selling Debtors' sale, assumption and assignment to the Purchaser of the Assigned Contracts is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.  In addition, the Assumption and Assignment Procedures are reasonable and approved in their entirety.

17.     The Debtors are authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (i) assume and assign to the Purchaser, effective as of the Closing, as provided by, and in accordance with, the Asset Purchase Agreement, the Assigned Contracts free and clear of all Liens, Claims and Interests of any kind or nature whatsoever, other than the Permitted Encumbrances and Assumed Liabilities, and (ii) execute and deliver to the Purchaser such documents or other instruments as the Purchaser reasonably deems necessary to assign and transfer the Assigned Contracts to the Purchaser.

18.     The Assigned Contracts shall be transferred and assigned to, pursuant to the Asset Purchase Agreement, and thereafter remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  The Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and assignment to the Purchaser.  The Debtors may assign each Assigned Contract in accordance with sections 363

21

and 365 of the Bankruptcy Code, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assigned Contracts, constitute unenforceable anti-assignment provisions which are void and of no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of each Assigned Contract have been satisfied.

19.   All defaults and all other obligations or liabilities under any Assigned Contract occurring, arising or accruing prior to the date of the assignment or transfer to the Purchaser shall be deemed cured or satisfied upon payment by the Purchaser of the proposed Cure Amount or any other cure amount reached by agreement after a Cure Payment Objection, and, without limiting the foregoing, no effect shall be given to any default of the type set forth in section 365(b)(2) of the Bankruptcy Code, or the type of default concerning an unexpired lease of real property described in section 365(b)(1) of the Bankruptcy Code whether or not such Assigned Contract is an executory contract within the meaning of section 365 of the Bankruptcy Code. The Cure Amounts listed on Schedule 3.7(c) of the Asset Purchase Agreement, or any other cure amount reached by agreement after a Cure Payment Objection, reflect the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due to the non-Debtor parties in connection with the assumption by the Debtors and assignment to the Purchaser of the Assigned Contracts.

20.   Except as provided in the Asset Purchase Agreement or this Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect

to any Assigned Contract, and all holders of such claims arising from and after Closing under any Assigned Contract are forever barred and estopped from asserting any claims under any Assigned Contract against the Debtors, their successors or assigns, and their estates.

21.    The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assigned Contracts.

22.    **No Successor Liability.**  Except for the Assumed Liabilities, to be paid solely to the extent provided for in the Asset Purchase Agreement and this Sale Order, neither the Purchaser, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Lien, Claim or Interest that arose or occurred prior to the Closing, or otherwise is assertable against the Selling Debtors or is related to the Purchased Assets prior to the Closing. The Purchaser is not and shall not be deemed a "successor" to the Selling Debtors or their estates, have, de facto or otherwise, merged with or into the Debtors or be a mere continuation or substantial continuation of the Selling Debtors or the enterprise of the Selling Debtors under any theory of law or equity as a result of any action taken in connection with the Asset Purchase Agreement or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Purchased Assets.

23.    Without limiting the foregoing, and except to the extent the Purchaser assumes the Assumed Liabilities, or takes the Purchased Assets subject to the Permitted Encumbrances, or as otherwise set forth in the Asset Purchase Agreement, the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Liens, Claims or Interests, including under any theory of successor or transferee liability, de facto

23

merger or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to of any of the following: (i) any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations); (ii) under any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine, or under any product warranty liability law or doctrine; (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which the Debtors are a party; (iv) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (v) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the (a) Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967, (g) the Americans with Disabilities Act of 1990, or (h) COBRA; (vi) environmental liabilities, debts, Claims, or obligations arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; (vii) any liabilities, debts, or obligations of or required to be paid by the

24

Debtors for any taxes of any kind for any period; (viii) any liabilities, debts, commitments, or obligations for any taxes relating to the operation of the Purchased Assets prior to the Closing; (ix) any bulk sale law; and (x) any litigation.

24. **Fair Consideration.** The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. The Sale may not be avoided under section 363(n) of the Bankruptcy Code. The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law. Neither the Selling Debtors nor the Purchaser have entered into the Asset Purchase Agreement or any agreement contemplated thereby or are consummating the Sale with any fraudulent or otherwise improper purpose, including, without limitation, to evade any pension liabilities. No other person or entity or group of persons or entities has offered to purchase the Purchased Assets for an amount that would provide greater value to the Debtors and their estates than the value provided by the Purchaser. The Court's approval of the Motion and the Asset Purchase Agreement are in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

25. **Retention of Jurisdiction.** This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, all amendments thereto, and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of

25

the Purchased Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order; (iii) protect the Purchaser, any of the Purchaser's affiliates, or any agent of the foregoing, against any Liens, Claims or Interests against the Selling Debtors or the Purchased Assets of any kind or nature whatsoever, except for the Permitted Encumbrances and Assumed Liabilities and (iv) enter any order under sections 363 and 365 of the Bankruptcy Code.

26.     **Good Faith Purchaser.**  The transactions contemplated by the Asset Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Order to consummate the transactions shall not affect the validity of the transactions (including the assumption and assignment of any of the Assigned Contracts).  The Purchaser is a purchaser in good faith of the Purchased Assets and is entitled to all the protections afforded by section 363(m) of the Bankruptcy Code.

27.     **No Bulk Law Application.**  No bulk sales law or similar law, shall apply in any way to the transactions contemplated by the Sale, the Asset Purchase Agreement, the Motion, and this Order.

28.     **Subsequent Plan Provisions.**   Nothing contained in any chapter 11 plan confirmed in any Debtor's bankruptcy case or any order confirming any such plan or in any other order in the Chapter 11 Cases shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Order.

29.     **Inconsistencies with Prior Orders, Pleadings or Agreements**.  To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in the Chapter 11 Cases, the terms of this Order shall govern and any prior orders shall be deemed amended or otherwise modified to the extent required to permit consummation of the Sale.  To

the extent there is any inconsistency between the terms of this Order and the terms of the Asset Purchase Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

30. **Failure to Specify Provisions.**  The failure to specifically include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

31. **Non-Material Modifications.**  The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement does not, based on the Debtors' judgment, have any adverse effect on the Debtors' estates.

32. **No Stay or Order.**  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Selling Debtors and the Purchaser are authorized to close the transactions immediately upon entry of this Order.  Time is of the essence in closing the transactions referenced herein, and the Selling Debtors and the Purchaser intend to close the transactions as soon as practicable.  This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

33. **Appointment of Trustee.**  The provisions of the Asset Purchase Agreement and this Order may be specifically enforced in accordance with the Asset Purchase Agreement notwithstanding the appointment of any chapter 7 or chapter 11 trustee after the Closing.

34. **Barrick Claims.** Effective as of the Closing, assuming the Closing (as defined in the Barrick Asset Purchase Agreement) shall have occurred prior to, or contemporaneously with, the Closing, all Claims of Barrick acquired by the Purchaser (including, without limitation, Proof of Claim No. 223 filed by Barrick against Debtor Midway Gold US Inc.) against any of the Debtors, including the Selling Debtors, are disallowed in their entirety and there shall be no recovery from the Debtors, including the Selling Debtors, in respect of such Claims, whether or not such Claims were asserted by Barrick in proofs of claim filed in these Chapter 11 Cases or scheduled by any of the Debtors. Proof of Claim No. 224 filed by Barrick Gold US Inc. (an affiliate of Barrick) against Debtor MDW Pan LLP is not affected in any way by this Order. Debtor MDW Pan LLP, the other Debtors and parties in interest retain any and all rights to object to Proof of Claim No. 224.[6] For the avoidance of doubt, it is the intention that all Claims of Barrick acquired by the Purchaser arising out of or relating to the Spring Valley Project in any way are disallowed pursuant to this Order.

35. **Equity Commitment Letter**. The Equity Commitment Letter dated November 30, 2015 issued by Waterton to the Selling Debtors is an essential component of the transactions contemplated by the Asset Purchase Agreement and this Order without which the Selling Debtors would not have entered into the Asset Purchase Agreement. The Court retains jurisdiction to hear and determine, on an expedited basis, any action by the Selling Debtors arising from a breach by Waterton of its obligations under the Equity Commitment Letter to seek specific performance by Waterton.

---

[6] Reference is made to the *Stipulation Regarding Proofs of Claim Filed by (1) Barrick Gold Exploration Inc. Against Midway Gold US Inc. (Claim No. 223) and (2) Barrick Gold U.S. Inc. Against MDW Pan LLP (Claim 224)* filed on December 8, 2015, which clarifies the claims asserted by Barrick and Barrick Gold US Inc. in Proofs of Claim 223 and 224, respectively.

36.  **Headings.**  Headings utilized in this Order are for convenience of reference only, and do not constitute a part of this Order for any other purpose

37.  **Time Periods.**  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38.  **Nonseverability.**  The provisions of this order are nonseverable and mutually dependent.

39.  **Royalty Matters**.  Notwithstanding anything provided in this Order or the Asset Purchase Agreement to the contrary, the Purchaser will assume the Assigned Contracts specifically identified on Schedule 2.1(h) as (i) "Mining Deed with Reservation and Conveyance of Royalty dated August 13, 2007 by and between Paul G. Schmidt and MGC Resources, Inc. Recorded in Pershing County, Nevada as Entry No. 356954 at Book: 427, Page: 443 of Official Records" and (ii) "Mining Deed with Reservation of Royalty dated May 5, 2006 by and between Seymork Investments, Ltd. and MGC Resources, Inc. Recorded in Pershing County, Nevada as Entry No. 248839 at Book: 408, Page: 207 of Official Records", and the royalty obligations associated therewith shall continue as obligations of the Purchaser; provided, however, that nothing herein is intended to affect or alter any ongoing litigation concerning such particular Assigned Contracts, nothing herein shall in any way operate to, or have the effect of, expanding the scope of, altering or impairing in any respect the pre-Closing Date legal, equitable, property, or contractual rights, obligations or defenses if any, of the parties to such Assigned Contracts, and such parties reserve any and all rights, claims and defenses with respect thereto.  The Purchaser acknowledges receipt of a copy of that certain Deed of Royalty Interest to the Lutheran Community Foundation, dated December 12, 2012 and recorded in the Official

29

Records of Pershing County, Nevada on December 31, 2012 at Document #0483605, Book 490 Page, 0022.

40. **Environmental Matters**.  Nothing in this Order releases, discharges, nullifies, precludes, or enjoins the enforcement of any environmental liability to a governmental unit that any entity would be subject to as the owner or operator of the Purchased Assets after the Closing Date (as defined in the Asset Purchase Agreement).  Nothing in this Order authorizes the transfer or assignment to the Purchaser of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.  Notwithstanding the foregoing sentence, nothing in this Order shall: (i) be interpreted to deem the Purchaser as the successor to the Selling Debtors under any successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to the Closing Date or for liabilities relating to off-site disposal of waste by the Selling Debtors prior to the Closing Date; (ii) create for any governmental unit any substantive right that does not already exist under law; or (iii) be deemed or construed to be an admission of liability by the Selling Debtors.  Nothing in this Order shall be construed to guarantee that any water right is in good standing or otherwise bind the State of Nevada Division of Water Resources and the Nevada State Engineer to any interpretation of the terms and conditions of any water right set forth in Schedule 2.1(g) of the Asset Purchase Agreement which conflict with the official records maintained by the State of Nevada Division of Water Resources with respect to each water right permit.

41. **Resolution of Cure Objection**.  In resolution of the objection of Lamonte J. Duffy to the Sale (Doc. No. 551), the Purchaser shall pay a cure amount of $3,399.56 with

30

respect to that certain Mineral Lease Agreement and Option to Purchase dated April 25, 2006 by and between Lamonte J. Duffy and MGC Resources, Inc., listed as agreement No. 6 on the Schedule of Contracts and Proposed Cure Amounts (Doc. No. 510).

Dated:  December ___, 2015
       Denver, Colorado

                                                    _____
                                                    THE HONORABLE MICHAEL E. ROMERO
                                                    UNITED STATES BANKRUPTCY JUDGE