**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 15-16835 MER** |
| | ) | |
| **MIDWAY GOLD US INC. *et al.*,**[1] | ) | **Chapter 11** |
| | ) | **Jointly Administered Under** |
| **Debtors.** | ) | **Case No. 15-16835 MER** |
| | ) | |

---

**MOTION FOR ENTRY OF AN ORDER (A) APPROVING DISCLOSURE STATEMENT, (B) APPROVING PROCEDURES FOR SOLICITATION OF VOTES ON JOINT CHAPTER 11 PLAN OF LIQUIDATION, AND (C) SCHEDULING HEARING FOR CONFIRMATION OF JOINT CHAPTER 11 PLAN OF LIQUIDATION**

---

Midway Gold US Inc. and the affiliated debtors and debtors in possession in these cases (collectively, the "Debtors"), hereby file this *Motion for Entry of an Order (A) Approving Disclosure Statement, (B) Approving Procedures for Solicitation of Votes on Joint Chapter 11 Plan of Liquidation, and (C) Scheduling Hearing for Confirmation of Joint Chapter 11 Plan of Liquidation* (the "Motion"). In support of the Motion, Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over these cases under 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3. The venue of these cases and related proceedings is proper in this District under 28 U.S.C. §§ 1408 and 1409.

[1] The Debtors and their respective case numbers are: Midway Gold US Inc. (15-16835 MER); Midway Gold Corp. (15-16836 MER); Golden Eagle Holding Inc. (15-16837 MER); MDW-GR Holding Corp. (15-16838 MER); RR Exploration LLC (15-16839 MER); Midway Services Company (15-16840 MER); Nevada Talon LLC (15-16841 MER); MDW Pan Holding Corp. (15-16842 MER); MDW Pan LLP (15-16843 MER); MDW Gold Rock LLP (15-16844 MER); Midway Gold Realty LLC (15-16845 MER); MDW Mine ULC (15-16846 MER); GEH (B.C.) Holding Inc. (15-16847 MER); GEH (US) Holding Inc. (15-16848 MER).

**RELEVANT BACKGROUND**

4. On June 22, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are continuing in possession of their property and are operating and managing their business and affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On July 1, 2015, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). No trustee or examiner has been appointed.

6. The Debtors, with the assistance of their professionals and in consultation with key parties, conducted a fulsome transaction process during these cases to identify all available restructuring alternatives in accordance with milestones approved by the Court in the *Final Order (A) Authorizing Post-Petition Use of Cash Collateral, (B) Granting Adequate Protection to Secured Parties, and (C) Granting Related Relief* (the "Cash Collateral Order") (Docket No. 452), as such order was amended from time to time by the Court or agreement by the parties.

7. Ultimately, the Debtors successfully sold substantially all of their assets and maximized value through two separate court approved asset sales. In particular, on December 15, 2016, the Court entered an order (Docket No. 565) approving the sale of the Debtors' interest in the Spring Valley project and related assets to Solidus Resources, LLC for a purchase price of $25 million in cash less any applicable costs, transfer taxes and investment banker transaction fees and certain other consideration. On May 13, 2016, the Court entered an order (Docket No. 870) approving the sale of substantially all of the Debtors' remaining assets to GRP Minerals,

LLC for a purchase price of $5.326 million in cash less certain cure costs, transfer taxes and investment banker fees and certain other consideration.

8. In order to provide for the distribution of the sale proceeds and remaining assets and to facilitate the prompt and efficient wind down of their estates, the Debtors entered into negotiations with the Committee, Commonwealth Bank of Australia (the "Senior Agent") as agent for the Senior Secured Parties, and Hale Capital Partners (the "Subordinate Agent") as agent for the Subordinate Secured Parties, and other parties regarding the terms of a consensual joint plan of liquidation.[2] As a result of these extensive good faith negotiations, the parties reached numerous agreements and heavily negotiated compromises that resolve significant disputes and avoid the need for potential litigation.

9. On July 21, 2016, the Debtors filed (i) their Joint Chapter 11 Plan of Liquidation (the "Plan") (Docket No. 973) and (ii) the Disclosure Statement for Joint Chapter 11 Plan of Liquidation (the "Disclosure Statement") (Docket No. 974), which, among other things, incorporate and implement the negotiated agreements and compromises and provide for the prompt and efficient wind down of these cases. The Plan is supported by the Committee, the Senior Agent, the Subordinate Agent, and various other parties in interest, and the Debtors respectfully submit that the Plan maximizes value and is in the best interest of their respective estates and creditors.

## RELIEF REQUESTED

10. By this Motion, the Debtors request entry of an order (the "Disclosure Statement Order"), substantially in the form attached hereto as Exhibit A, (a) approving the Disclosure Statement as containing adequate information for purposes of section 1125 of the Bankruptcy

[2] The terms Senior Secured Parties and Subordinate Secured Parties shall have the meanings given in the Cash Collateral Order.

Code and for use in connection with soliciting votes on the Plan, (b) approving procedures for soliciting votes on the Plan (the "Solicitation Procedures"), (c) scheduling a hearing for confirmation of the Plan, and (d) granting related relief.

## BASIS FOR RELIEF

### A. Approval of the Disclosure Statement

11. The Debtors request that the Court approve the Disclosure Statement as containing information sufficient to satisfy § 1125(b) of the Bankruptcy Code. Section 1125(b) requires that, before soliciting votes on a plan, the plan proponent must provide a disclosure statement that contains adequate information regarding the proposed plan. Section 1125(a) defines "adequate information" as:

> information of the kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information . . . .

12. The amount and type of information required to satisfy § 1125(a) must be determined on a case-by-case basis. The legislative history of § 1125 indicates that the threshold of what constitutes "adequate information" is flexible and based on the circumstances of each case. Specifically, the legislative history provides:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a

> practical approach as to what is necessary under the circumstances of each case.

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 409 (1977).

13. Consistent with the legislative history, courts have broad discretion to determine what constitutes adequate information necessary to satisfy the requirements of § 1125(a). *See In re Phoenix Petroleum Co*., 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("The general language of the statute and its surrounding legislative history make clear that the determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court") (internal quotations omitted); *see also In re 3DFX Interactive, Inc*., 2006 Bankr. LEXIS 1498 (N.D. Cal. 2006) ("Section 1125 affords the Bankruptcy Court substantial discretion in considering the adequacy of a disclosure statement . . . . '[A]dequate information' within the meaning of § 1125(a)(1) is not a static concept: Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis").

14. This grant of discretion was intended to facilitate a debtor's effective emergence from chapter 11 in the broad range of businesses in which chapter 11 debtors engage. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. at 408-409 (1977). A disclosure statement must provide creditors entitled to vote on the plan with information that is "reasonably practicable" to permit an "informed judgment." *Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 158 n. 26 (Bankr. D. Del. 2002). The general purpose of the disclosure statement is to set forth sufficient facts and information to permit a creditor to make an informed evaluation of the merits of the plan. *See Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988); *Phoenix Petroleum*, 278 B.R. at 392.

15. "The determination of what is "adequate information" in a disclosure statement is a practical and variable inquiry made on a case-by-case basis. Beyond the statutory guidelines in § 1125(a)(1), the decision to approve or reject a disclosure statement is within the discretion of the bankruptcy court." *In re Aspen Limousine Services, Inc*., 193 B.R. 325, 334 (Dist. Colo. 1996) (internal citations omitted).

16. To determine whether a disclosure statement contains adequate information, courts typically expect the following elements to be included in a disclosure statement, where applicable to the circumstances of the case: (a) the events leading to the filing of a bankruptcy petition; (b) a description of the available assets and their values; (c) the anticipated future of the company; (d) the source of information stated in the disclosure statement; (e) a disclaimer; (f) the present condition of the debtor while in chapter 11; (g) the scheduled claims; (h) the estimated return to creditors under a chapter 7 liquidation; (i) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (j) the future management of the debtor; (k) the chapter 11 plan or a summary of it; (l) the estimated administrative expenses, including attorneys' and accountants' fees; (m) the collectability of accounts receivable; (n) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the plan; (o) information relevant to the risks posed to creditors under the plan; (p) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (q) litigation likely to arise in a nonbankruptcy context; (r) tax attributes of the debtor; and (s) the relationship of the debtor with affiliates. *See Phoenix Petroleum*, 278 B.R. at 393, n.6.

17. The Disclosure Statement contains adequate information, as required by § 1125, so that stakeholders may make an informed decision in voting to accept or reject the Plan. The

Debtors submit that the Disclosure Statement is comprehensive and contains the type of information described above. The Disclosure Statement includes complete discussions of: (a) the features, terms, and provisions of the Plan; (b) significant events preceding the Debtors' chapter 11 cases; (c) the Debtors' prepetition operation and capital structure; (d) a detailed description of the significant compromises and agreements upon which portions of the Plan are based; (e) a detailed description of the method to fund and otherwise implement the Plan and make distributions to creditors, including the establishment of a liquidating trust; (f) a description of the nature and extent of likely claims against the Debtors' estates, including administrative claims; (g) the risk factors affecting the Plan; and (h) the federal tax consequences of the Plan. Accordingly, the Debtors respectfully submit that the Disclosure Statement contains adequate information within the meaning of § 1125 and should be approved.

**B. Scheduling of Confirmation Hearing**

18. Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

Fed. R. Bankr. P. 3017(c).

19. In accordance with this provision, the notice requirements set forth in Rule 2002(b), and in view of the proposed solicitation schedule set forth in this Motion, the Debtors request that a hearing on confirmation of the Plan (the "Confirmation Hearing") be scheduled for the week of September 26, 2016. The Confirmation Hearing may be continued from time to time by the Court without further notice other than adjournments announced in court.

20. The proposed date for the Confirmation Hearing complies with the applicable Bankruptcy Rules, including the 28-day notice of confirmation required in Rule 2002(b), will

provide parties-in-interest with ample time (more than 28 days following the expected approval of the Disclosure Statement during the week of August 22, 2016) to consider and submit ballots for voting on the Plan and to consider any possible objections to confirmation of the Plan, and will enable the Debtors to pursue confirmation of the Plan without needless and costly delay.

**C. Procedures for Noticing the Confirmation Hearing**

21. Rule 2002(b) and (d) require not less than 28 days' notice by mail to all creditors, indenture trustees, and equity security holders of the time set for filing objections to, and the hearing to consider, confirmation of a chapter 11 plan. In accordance with Rules 2002 and 3017(d), the Debtors propose to satisfy such notice requirements by sending a notice (the "Confirmation Hearing Notice"), substantially in the form attached hereto as Exhibit B, to all creditors and equity security holders of the Debtors.

22. The Confirmation Hearing Notice will provide for, among other things: (a) the time fixed for filing objections to confirmation of the Plan; (b) the time, date, and place of the Confirmation Hearing; and (c) instructions on how to obtain copies of the Court-approved Disclosure Statement and Plan (for creditors and equity security holders not receiving a full "Solicitation Package" as discussed below). The Debtors will provide copies of the proposed Disclosure Statement and Plan to any party-in-interest who specifically requests them in the manner specified in the Confirmation Hearing Notice and Rule 3017(a). All parties-in-interest may access copies of the Disclosure Statement and Plan free of charge at the Debtors case website maintained by Epiq Solutions at the following web-address: http://dm.epiq11.com/MGC. Additionally, copies of the Disclosure Statement and the Plan (a) will be on file with the Office of the Clerk of the Bankruptcy Court, viewable at the Clerk's office and through access to the

PACER and ECF systems and (b) can be requested by email at tabulation@epiqsystems.com and referencing "Midway Gold US Inc." in the subject line.

23. The Confirmation Hearing Notice will be sent via regular U.S. Mail, postage prepaid, to: (a) all persons or entities that have filed proofs of claim in these cases, (b) all persons or entities listed on the Debtors' schedules of liabilities as holding liquidated, non-contingent, undisputed claims, or as being party to an executory contract or unexpired lease with the Debtors, (c) any other known holders of claims against or equity interest in the Debtors, (d) all parties known to assert an interest in any of the Debtors' property, including parties who have asserted mechanic's lien rights (to the extent that the claims of such parties have not already been disallowed by an order of the Court), (e) the Securities and Exchange Commission, (f) the Ontario Securities Commission, (g) the Office of the United States Trustee for Region 19, (h) all taxing, environmental and other federal and state governmental authorities appearing in the Debtors' books and records, and (i) all other parties-in-interest that have filed a request for notices under Rule 2002 in these cases.

24. The Debtors respectfully submit that the foregoing procedures will provide adequate notice of the Confirmation Hearing and time fixed for filing objections to confirmation of the Plan and, accordingly, request that the Court approve the notice as adequate.

25. Under Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." The Confirmation Hearing Notice provides, and the Debtors request that the Court direct, that any objections to confirmation of the Plan must: (a) be in writing; (b) state the name and address of the objecting party and the nature and amount of the claim or interest of that party; (c) state with particularity the basis of any objection and include, where appropriate, proposed language for any modification to the Plan; (d) conform to the

Bankruptcy Rules and the Local Rules; and (e) be filed, together with proof of service, with the Court and served so that they are received, on or before 5:00 p.m. Prevailing Mountain Time at least seven days before the date set for the Confirmation Hearing (the "Confirmation Objection Deadline"), by (i) counsel for the Debtors, (ii) counsel to the Committee, (iii) counsel for the Senior Agent, (iv) counsel for the Subordinate Agent, and (v) the Office of the United States Trustee. This deadline will allow the Court, the Debtors, the Committee and other parties-in-interest sufficient time to consider objections and proposed modifications to the Plan before the Confirmation Hearing.

**D. Voting Record Date and Voting Deadline for Receipt of Ballots**

26. The Debtors request that Court fix the Voting Record Date, the date upon which holders of claims or interests must hold a claim or interest entitling them to cast a ballot, as the date the Court enters the Disclosure Statement Order (the "Voting Record Date"). The Debtors request that the Court fix September 16, 2016 as the deadline by which the holders of claims or interests may submit ballots accepting or rejecting the Plan in accordance with Rule 3017(c) (the "Voting Deadline").

**E. Approval of Ballots**

27. Rule 3017(d) requires the plan proponent to mail a form of ballot, substantially conforming to Official Form No. 314, only to "creditors and equity security holders entitled to vote on the plan." The Debtors propose to distribute to those parties entitled to vote on the Plan ballots in the forms attached to this Motion as Exhibit C (the "Ballots"). The Ballots are based on Official Form No. 314, but have been modified to address the particular aspects and issues relevant to these chapter 11 cases and the terms of the Plan, and to include certain additional information that the Debtors believe to be appropriate.

28. The Ballots will be distributed to holders of claims or interests, as the case may be, in Classes 2, 6, 7, 8, 9, and 10 under the Plan, which are the only Classes entitled to vote to accept or reject the Plan under § 1126.

29. Classes 1, 3, 4 and 5 under the Plan are unimpaired and are conclusively deemed to accept the Plan under § 1126(f). Creditors in those Classes will not receive Ballots.

30. Classes 11 and 12 are impaired under the Plan and are conclusively deemed to reject the Plan. Creditors in those Classes will not receive Ballots.

**F. Transmittal of Solicitation Packages**

31. In accordance with Rule 3017(d), the Debtors will commence the solicitation in accordance with the following Solicitation Procedures:

a. The following materials (the "Solicitation Package") shall be submitted to all holders of Claims eligible to vote on the Plan on a compact disc in PDF format, other than the Confirmation Hearing Notice and the applicable Ballot, which shall be provided in hard copy paper format:

   i. The Plan;
   ii. The approved Disclosure Statement;
   iii. The Disclosure Statement Order;
   iv. The Confirmation Hearing Notice;
   v. The applicable Ballot and voting instructions; and
   vi. A prepaid return envelope.

b. Holders of Claims not eligible to vote on the Plan will not receive the full Solicitation Package. Rather, such parties will receive only a hard copy of (i) the Confirmation Hearing Notice and (ii) a notice advising such party that it is not entitled to vote on the Plan substantially in the form attached hereto as Exhibit D (the "Notice of Non-Voting Status"). The Confirmation Hearing Notice will direct such parties to the case website maintained by Epiq Solutions to download and view copies of the Plan, the approved Disclosure Statement, the Disclosure Statement Order and all other related documents free of charge.

c. The U.S. Trustee, the Securities and Exchange Commission, the Internal Revenue Service and all other notice parties appearing on the Debtors' core service list in these cases shall receive only a hard copy of the Confirmation Hearing Notice. The Confirmation Hearing Notice will direct such parties to the case website maintained by Epiq Solutions to download and view copies of the Plan, the

approved Disclosure Statement, the Disclosure Statement Order and all other related documents free of charge.

d. The service of the Solicitation Package and other documents required by these Solicitation Procedures shall be accomplished by mailing such documents to the appropriate parties via regular U.S. Mail, postage prepaid.

32. No interested party will be prejudiced by the proposed notice procedures. All interested parties will receive a paper copy of the Confirmation Hearing Notice, which contains instructions for obtaining the Plan and Disclosure Statement and related documents free of charge from the case website maintained by Epiq Solutions at http://dm.epiq11.com/MGC or through other methods of obtaining paper copies.

33. The Solicitation Procedures are designed to provide ample notice to parties in interest and conserve the limited resources of the Debtors' estates. Requiring the Debtors to mail hard copies of the Plan and Disclosure Statement to the nearly 9,000 parties appearing in their notice records is cost-prohibitive and unnecessary. Allowing the Debtors to utilize the case website maintained by Epiq and compact discs with electronic copies of documents in PDF format, and to provide notice in the manner described above, will conserve resources and balance the interests of due process with the spirit of economy inherent in the Bankruptcy Code.

34. The foregoing notice procedures constitute adequate notice of the Confirmation Hearing and the Confirmation Objection Deadline, and comply with Rules 2002 and 3017. Accordingly, the Debtors respectfully request that the Court approve the form and manner of service of the proposed notice.

**G. Procedures for Vote Tabulation**

35. Bankruptcy Code § 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in

> amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Rule 3018(a) provides that the "court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."

36. Solely for purposes of voting to accept or reject the Plan and not for the purpose of the allowance of, or distribution on account of, a claim, and without prejudice to the rights of the Debtors in any other context, the Debtors propose that the following procedures be used in tabulating votes to accept or reject the Plan (the "Tabulation Procedures"):

a. Unless otherwise provided in these Tabulation Procedures, a Claim[3] will be deemed temporarily Allowed for voting purposes only in an amount equal to: (i) the liquidated, non-contingent, undisputed amount of such Claim as set forth in the Debtors' Schedules if no proof of claim has been timely filed in respect of such Claim; or (ii) if a proof of claim has been timely filed in respect of such Claim, the amount set forth in such proof of claim;

b. If a Claim is deemed Allowed under the Plan or in an order of the Court entered prior to the Voting Record Date, such Claim is allowed for voting purposes in the deemed Allowed amount set forth in the Plan or such order;

c. If a Claim for which a proof of claim has been timely filed is for unknown or undetermined amounts, or is wholly unliquidated or contingent (as determined on the face of the Claim or after a reasonable review of the supporting documentation by the Balloting Agent), and such Claim has not been Allowed, such Claim will be temporarily Allowed for voting purposes only, and not for purposes of allowance or distribution and accorded one vote and valued at an amount equal to one dollar ($1.00);

d. If a Claim is listed on a timely filed proof of claim as contingent, unliquidated, or disputed in part, such Claim is temporarily Allowed in the amount that is liquidated, non-contingent, and undisputed for voting purposes only, and not for purposes of allowance or distribution;

---

[3] Unless specifically defined in this Motion, all capitalized terms are given the definitions ascribed to them in the Disclosure Statement.

e. If a holder of a Claim identifies a Claim amount in its Ballot that is different than the amount otherwise calculated in accordance with the Tabulation Procedures, the Claim will be temporarily Allowed for voting purposes in the amount calculated in accordance with the Tabulation Procedures;

f. Creditors with Claims that have been indefeasibly paid, in full or in part, shall only be permitted to vote the unpaid amount of such Claim, if any, to accept or reject the Plan;

g. Duplicate Claims within the same Voting Class, will be deemed temporarily Allowed for voting purposes only in an amount equal to one such Claim and not in an amount equal to the aggregate of such claims;

h. Creditors will not be entitled to vote Claims to the extent such Claims have been superseded and/or amended by other Claims filed by or on behalf of such creditors, regardless of whether the Debtors have objected to such earlier filed Claim;

i. If the Debtors have served an objection or request for estimation as to a claim at least ten (10) calendar days before the Voting Deadline, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and manner as set forth in such objection;

j. Claims filed for $0.00 are not entitled to vote;

k. Any Class that contains claims entitled to vote but no votes are returned for such Class shall be deemed to have accepted the Plan;

l. The voter must complete each section of the Ballot, including, without limitation, certifying the amount of its Claim, voting to accept or reject the Plan, completing the requested identification information, and signing and dating the Ballot. If the party executing the Ballot is signing as a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or acting in a fiduciary or representative capacity, they should indicate such capacity when signing and, if required or requested by the Balloting Agent, the Debtors, or the Court, must submit evidence satisfactory to the requesting party to so act on behalf of the holder of the Claim;

m. The voter must vote all of its Claims either to accept or reject the Plan. Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted. To the extent possible, the Debtors shall mail each claimant holding a Claim in the Voting Class a single Ballot on account of the claims held by such claimant in the Voting Class;

n. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class shall be

aggregated as if such creditor held one Claim in such Class, and the votes related to such Claims shall be treated as a single vote to accept or reject the Plan;

o. If multiple Ballots are received from the same voter with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect such voter's intent and will supersede and revoke any prior Ballot received;

p. If a creditor submits inconsistent Ballots, such Ballots shall not be counted;

q. Delivery of a defective or irregular Ballot will not be deemed to have been made until such defect or irregularity has been cured or waived by the Debtors. Any waiver by the Debtors of defects or irregularities in any Ballot will be detailed in the voting report filed with this Court by the Balloting Agent. Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots, nor will any of them incur any liability for failure to provide such notification;

r. The Debtor is hereby authorized to waive any defects or irregularities as to any particular Ballot at any time, either before or after the Voting Deadline, and any such waivers shall be documented in the tabulation report prepared by the Balloting Agent;

s. In addition, the following Ballots will not be counted in determining the acceptance or rejection of the Plan:

   i. any Ballot that is illegible or contains insufficient information to permit the identification of the holder;
   ii. any Ballot that (a) does not indicate an acceptance or rejection of the Plan, (b) indicates both an acceptance and rejection of the Plan, and/or (c) partially accepts and partially rejects the Plan;
   iii. any Ballot cast by a person who does not hold, or represent a person that holds, a Claim in the Voting Class;
   iv. any Ballot received after the Voting Deadline will not be counted unless the Debtors have granted an extension with respect to such Ballot. The voter may choose the method of delivery of its Ballot to the Balloting Agent at its own risk. Delivery of the Ballot will be deemed made only when the original properly executed Ballot is actually received by the Balloting Agent;
   v. any Ballot delivered by facsimile transmission, electronic mail, or any other means not specifically approved herein;
   vi. any Ballot sent to a person other than the Balloting Agent; and
   vii. any Ballot not bearing an original signature.

37. The Debtors believe that the foregoing proposed Tabulation Procedures provide for a fair and equitable voting process. If the Debtors object to the allowance of a Ballot for voting purposes, the Debtors propose that such objection be filed no later than three business days after the Voting Deadline, and a hearing to determine the allowance of such Ballot for voting purposes be held on or before the date set for the Confirmation Hearing.

## **CONCLUSION**

For the above reasons, the Debtors respectfully submit that the relief requested in this Motion will facilitate the efficient solicitation of votes with respect to the Plan and is otherwise in the best interest of the Debtors' estates and creditors.

WHEREFORE, the Debtors respectfully request that the Court enter the Disclosure Statement Order, substantially in the form attached hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: July 25, 2016.

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

/s/ *Stephen D. Lerner*

Stephen D. Lerner (Ohio #0051284)
Squire Patton Boggs (US) LLP
221 E. Fourth Street, Suite 2900
Cincinnati, OH 45202
(513) 361-1200 (phone)
(513) 361-1201 (fax)
Stephen.lerner@squirepb.com
Admitted to District Court for District of Colorado

Nava Hazan (NY # 3064409)
Squire Patton Boggs (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112
(212) 872-9800
(212) 872-9815
Nava.hazan@squirepb.com
Admitted to District Court for District of Colorado

SENDER WASSERMAN WADSWORTH, P.C.

*/s/ Aaron J. Conrardy*

Harvey Sender, #7546
Aaron J. Conrardy, #40030
1660 Lincoln Street, Suite 2200
Denver, Colorado 80264
(303) 296-1999; (303) 296-7600 (fax)
hsender@sww-legal.com
aconrardy@sww-legal.com

**Attorneys for the Debtors and Debtors in Possession**